UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


VICTORIA BYRGE CHILDS,                )
                                      )
            Plaintiff,                )
                                      )
v.                                    )        3:07-CV-85
                                      )        (PHILLIPS/GUYTON)
MICHAEL J. ASTURE,                    )
Commissioner of                       )
Social Security,                      )
                                      )
            Defendant.                )


## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding the disposition by the District Court of Plaintiff's Motion For Summary Judgment [Doc.

10] and the Defendant's Motion For Summary Judgment. [Doc. 12].  Plaintiff Victoria Byrge Childs

seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision

of the defendant Commissioner.

The ALJ made the following findings:

> 1.  The claimant meets the nondisability requirements
> for a period of disability and Disability Insurance
> Benefits set forth in Section 216(i) of the Social
> Security Act and is insured for benefits through the
> date of this decision.
>
> 2.  The claimant has not engaged in substantial
> gainful activity since the alleged onset of disability.

3.    The claimant's mood disorder, history of dysthymic disorder and rule out bipolar disorder, seizure disorder, lumbar spine degenerative disc disease and disc bulge, migraine headaches, and irritable bowel syndrome (IBS) are considered "severe" based on the requirements in the Regulations.

4. These medically determinable impairments do not meet or medially equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. The claimant has no more than mild restrictions of activities of daily living and no more than moderate limitation of ability to maintain social functioning, and to sustain concentration, persistent, or pace. She has experienced no episodes of decompensation, and she functions adequately outside of a highly supportive setting.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: to perform unskilled work at the light exertional level provided she avoid all exposure to hazardous machinery and heights, and avoid concentrated exposure to vibration. In addition, she is able to sustain concentration, persistence, and pace over extended periods for simple tasks; can perform detailed tasks with some difficulty, but still is able to do them; is able to interact with the general public over extended periods for simple tasks, and perform detailed tasks with some difficulty at times, but is still able to do them; and she is able to respond to routine changes.

7. The claimant is unable to perform any of her past relevant work.

8. The claimant is a "younger individual between the ages of 18 and 44."

9. The claimant has a "high school (or high school equivalent) education."

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case.

11. The claimant has the residual functional capacity to perform a significant range of light work.

12. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.20 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as food preparer, janitor, or inspector, with some 32,000 such jobs in the regional economy and some 1,156,000 such jobs nationally.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

(Tr. 22-24).

If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. 42 U.S.C. § 405(g). See Warner v. Commissioner of Social Security, 375 F.3d 387 (6th Cir. 2004); Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir. 1987); Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. See Crisp v. Secretary of Health and Human Services, 790 F.2d 450, 453 n.4 (6th Cir. 1986); see also Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986) (unless the court is persuaded that the Secretary's findings are "legally

insufficient," they should not be disturbed). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Siterlet, 823 F.2d at 920 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)).

The Plaintiff is forty (40) years old, has a G.E.D., and has past work experience in a kitchen range factory, in a sewing factory, and as a cashier (Tr. 424-426). She argues that the ALJ erred by not finding her disabled by her mental condition. Although the ALJ determined that she has "severe" mental impairments (Tr. 18), she contends that the ALJ erred in evaluating the severity of her mental impairments and their effect on her ability to work. Plaintiff points to a diagnosis of major depressive disorder made by her treating psychiatrist, in December, 1998. (Tr. 248), a diagnosis of dysthymic disorder in January, 2001 (Tr. 242), a diagnosis of dysthymic disorder and rule out bipolar disorder in April, 2002 (Tr. 229), and a diagnosis of mood disorder NOS in February, 2005 (Tr. 344-355). She also had a diagnosis of depression in May, 2004 (Tr. 258-265). Plaintiff has received treatment for depression, anxiety and bipolar disorder, and she maintains that the evidence demonstrates that she lacks the ability to meet the basic mental demands to successfully and consistently engage in substantial gainful activity. Moreover, the Plaintiff argues that the ALJ should have been guided by the opinion of consultative examiner Dr. Kathryn Smith, Ph.D., who, in June, 2004, diagnosed major depressive disorder, chronic, moderate, with GAF of 60. Dr. Smith opined that the Plaintiff is likely to be limited to a moderate degree in her ability to do work-related activities by depression; is likely to miss work due to depression; and would have other problems and limitations (Tr. 289-293). The Plaintiff argues that the ALJ, in his decision, did not mention the limitations noted by Dr. Smith.

The Plaintiff also complains that the ALJ failed to obtain the testimony of a vocational expert, and therefore, failed to establish with substantial evidence that there are jobs in the national economy which the Plaintiff can perform.

In opposition, the Commissioner argues that the ALJ, who is responsible for weighing the evidence, considered Plaintiff's testimony, and the other record evidence as a whole in determining that Plaintiff was not disabled, because she could work with some limitations (Tr. 18-21). According to the Commissioner, the ALJ determined that to the extent Plaintiff had limitations resulting from her mental impairments, he reasonably accommodated them when he found that Plaintiff could sustain concentration, persistence and pace over extended periods for simple tasks; could perform detailed tasks with some difficulty, but was able to perform them; was able to interact with the general public over extended periods for simple tasks; and could respond to routine changes (Tr. 21, 23).

The Court finds that the ALJ's evaluation of Plaintiff's mental impairments was supported by substantial evidence. The record did not contain any physician or treating source opinion that opined that Plaintiff was disabled (Tr. 21). The Plaintiff only once received professional psychological treatment, in February 2005 (Tr. 18, 21). Before that time, Plaintiff last sought psychological treatment in 2002, almost three years previously, evidence that discredits Plaintiff's allegations of debilitating mental impairments (Tr. 19, 21, 348, 428-29). The ALJ further noted that Plaintiff's treatment, which consisted of medication prescribed by Dr. Roskos, her primary care physician, was given at approximately six month and one year intervals and seemingly controlled her psychological symptoms (Tr. 18, 273, 277, 279, 431). See SSR 96-7p (claimant is less credible if level of treatment is inconsistent with level of complaints). When Plaintiff asked Dr.

5

Roskos for a statement in support of her disability application, Dr. Roskos declined and suggested that she see "a disability specialist." (Tr. 327).

The Commissioner correctly notes that when Plaintiff sought treatment in February 2005, on mental status evaluation, she had appropriate appearance, had cooperative attitude, was calm, had appropriate to mood affect, had normal mood and speech, had normal thought content, had intact thought process, had average attention span, and had average general intellectual functioning (Tr. 346). As noted by the ALJ, at the time of the February 2005 evaluation, a GAF score of 55 was assigned, which indicated only moderate limitations in Plaintiff's overall functioning (Tr. 18, 354). See DSMIV-TR at 34. This evidence does not support Plaintiff's allegations of debilitating mental impairments.

The ALJ also properly considered that Dr. Frank Kupstas, the state agency psychologist, found that Plaintiff was capable of working with some restrictions (Tr. 18-19, 294-302, 305-06). See 20 C.F.R. § 404.1527(f)(2)(I) (state agency medical experts are highly qualified experts in Social Security disability evaluation and the ALJ must consider their findings). Dr. Kupstas opined that Plaintiff was able to sustain concentration, persistence and pace over extended periods for simple tasks; could perform detailed tasks with some difficulty at times; could interact with general public over extended periods for simple tasks; and was able to respond to routine changes (Tr. 296). This opinion provided substantial evidence for the ALJ's finding that Plaintiff could work with some restrictions.

Plaintiff argues that the ALJ did not discuss or reject Dr. Smith's limitations. The ALJ, however, did make reference to the evaluation by Dr. Smith and Dr. Smith's GAF score of 60, indicating moderate limitation of overall functioning (Tr. 18).

More problematic, the Court finds, is the Plaintiff's argument that because she had non-exertional limitations, the ALJ improperly relied on the GRID and a vocational specialist report, rather than consulting a vocational expert. In this case, the ALJ admittedly chose not to consult a vocational expert, but instead considered a vocational specialist report and relied on the GRID as a framework to determine that the Plaintiff was not disabled, because she could perform a significant number of jobs in the national economy. The Commissioner argues that he has discretion to decide whether to use a vocational expert.

The ALJ determined that the Plaintiff had the residual functional capacity for performing "a significant range" of light work. The ALJ then stated that "[i]f the claimant were capable of performing the full range of light work, a finding of 'not disabled' would be directed by the Medical-Vocational Guidelines." However, the ALJ opined that "[t]he claimant's ability to perform all or substantially all of the requirements of light work is impeded by additional exertional and/or non-exertional limitations." He then relied upon a state Agency vocational assessment performed in August, 2004(Tr. 142-43), for the finding that the Plaintiff could perform a significant number of jobs in the national economy. The Plaintiff, however, correctly notes that the State Agency vocational assessment was not based on limitations as determined by the ALJ, including the effects of mental limitations.

If a Social Security claimant establishes that she cannot return to her past relevant work, then the Commissioner must show that a significant number of jobs exist in the national economy which the claimant can perform. If a claimant has no non-exertional impairments, this can be accomplished by use of the Medical-Vocational Guidelines. If there are non-exertional impairments, the ALJ takes evidence from a vocational expert.

The question the Court has is: where is the substantial evidence upon which the ALJ relied in determining that there were jobs the Plaintiff could perform? The vocational assessment to which the ALJ refers in his decision appears to make no mention of the Plaintiff's non-exertional mental impairments. The vocational assessment is not substantial evidence that a significant number of jobs exist which a person with the Plaintiff's moderate mental impairments could perform. While the Court finds that the ALJ properly evaluated the evidence regarding the Plaintiff's alleged mental impairments, and while the Court is inclined to believe that a significant number of jobs probably exist for the Plaintiff, the Court can not reach that conclusion based on the August, 2004 vocational assessment.

That being said, the record by no means proves on its face that the Plaintiff is disabled. It is **RECOMMENDED** that this case be **REMANDED** to the defendant Commissioner. It is also recommended that a qualified vocational expert be questioned regarding available jobs. To that end, it is recommended that the Plaintiff's Motion [Doc. 10] be **GRANTED** only for remanding the case as aforesaid. It is also recommended that the Defendant's Motion [Doc. 12] be **DENIED**.[1]

Respectfully submitted,

s/H. Bruce Guyton
United States Magistrate Judge

---

[1]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).